IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DEBRA MATLOCK, <br><br> *Plaintiff*, <br> *vs*. <br><br> UNIVERSITY OF ILLINOIS CHICAGO, <br><br> *Defendant*. | COMPLAINT AND JURY DEMAND <br><br> Case No.: |

**COMPLAINT**

Plaintiff Debra Matlock ("Plaintiff"), by and through her undersigned counsel, hereby files this Complaint against Defendant University of Illinois Chicago ("Defendant" or "UIC") alleging as follows:

**NATURE OF THE ACTION**

1. This is a complaint for employment discrimination and retaliation brought under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act of 1967 ("ADEA"), and 42 U.S.C. § 1981("Section 1981") to redress Defendant's race, age and gender discrimination and retaliation against Plaintiff, a current employee of Defendant.

2. Plaintiff, the only minority Director in the UIC system, has received disparate and discriminatory performance feedback, was prevented from realizing promotions commensurate with her experience and work effort, was paid less than White employees with similar or less experience and less scope of responsibilities, and was pressured into effectuating her retirement earlier than anticipated in order to facilitate the retention and promotion of her subordinate – a younger, White male employee.

1

3. UIC, a federally designated "Minority-Serving Institution[1]" has operated in a manner contrary to it its published diversity policies in its treatment of Plaintiff.[2]

4. Defendants continues to engage in its illegal conduct, unchecked by executive management despite being made aware of such disparate treatment by Plaintiff herself.

5. As a result, Plaintiff has suffered and continues to suffer from emotional and economic damages. Plaintiff seeks mandatory injunctive relief and damages.

## PARTIES

**A.** *Plaintiff*

6. Plaintiff is a Black, female citizen of the United States of America, born on May 21, 1952, who resides in Chicago, Illinois.

7. Plaintiff was hired by Defendant as the Director of UIC's Purchasing and Contract Management Department on or around September 3, 2014. At all relevant times, Plaintiff was employed by Defendant.

8. Plaintiff is presently employed by Defendant in the role of Executive Director of Purchasing and Contract Management.

---

[1] *Diversity at a Glance*, UIC, (last visited October 6, 2023), https://www.uic.edu/about/diversity-at-a-glance/.

[2] In addition to violating federal and state statutes prohibiting discrimination, UIC has operated in a manner violating several university policies, including but not limited to, OAE-1110-004 "Nondiscrimination Policy Statement" ("The University of Illinois System will not engage in discrimination or harassment against any person because of race, color, religion, sex, national origin, ancestry, age…and will comply with all federal and state nondiscrimination, equal opportunity and affirmative action law, orders and regulations") and OAE-110-003 "Prohibition of Retaliation Following Claims of Unlawful Discrimination" ("Retaliation occurs when an employer or someone acting on behalf of the employer takes a Materially Adverse action against an individual in or outside of the workplace because the individual engaged in Protected Activity").

B.   *Defendant*

9. Defendant is a public university within the University of Illinois system located at 1200 West Harrison St. Chicago, Illinois 60607.

10. At all relevant times, Defendant was Plaintiff's employer.

## JURISDICTION AND VENUE

11. This Court has jurisdiction over Plaintiff's Title VII, ADEA, and §1981 claims pursuant to 28 U.S.C. § 1331, which creates original jurisdiction for this Court over all civil actions arising under the Constitution, laws, or treaties of the United States. Jurisdiction is also proper in this Court pursuant to 28 U.S.C. § 1343(a)(3) and (4).

12. Venue is proper under 28 U.S.C. §§ 1391(b)(1) and (2).

13. Plaintiff has met all administrative prerequisites to maintenance of this suit in that she timely filed a charge of discrimination with the Equal Employment Opportunity Commission on June 13, 2023.

14. On October 6, 2023, the EEOC issued a Notice of Right to Sue, ending its processing of Plaintiff's charge and granting her the right to pursue her claims in federal or state court. **See Exhibit. A.**

## FACTUAL ALLEGATIONS

15. Ms. Matlock has over 40 years of experience in transactional law and technology licensing, in both the private and public sectors.

16. Ms. Matlock is employed by Defendant as Executive Director of UIC's Purchasing and Contract Management. Her department processes all procurements and contracts for UIC's 16 colleges, administrative departments and UI Hospital and clinics.

17. Ms. Matlock plans and has planned to remain employed by UIC until her eventual retirement.

### A. *Discrimination in Ms. Matlock's Successful 2019 Negotiation Deal*

18. In or around November 2018, Ms. Matlock was part of a negotiation team tasked by UIC with contracting for a new eProcurement system. Ms. Matlock was the only Black employee on the team. She is also the only minority Director or stakeholder involved in the oversight and direction of UIC's integrated electronic procurement-through-payment processes analysis and improvement activities, which have been ongoing since 2016.

19. During negotiations, Ms. Matlock observed several members of the team engaging in actions which were causing delay in the negotiations. To no avail, Ms. Matlock made several efforts to advance the team's efforts, establish a sense of urgency, and suggest ways to move forward to preserve the deal. Ms. Matlock's initiative was inaccurately and inappropriately mischaracterized as "bullying." Ms. Matlock was aware that the team's delay was putting UIC's license at risk of expiration. If the license were to expire, UIC would not be able to extend or renew its expired contract.

20. Ms. Matlock's communication skills and extensive experience in negotiating software purchases produced an extraordinary benefit for the University System. As a result of her background in technology licensing and negotiating, Ms. Matlock successfully negotiated a savings of $2.4 million on UIC's systemwide software contract. Under the original proposal, the University would pay licensing fees of $992,000 a year for 3 years. Ms. Matlock successfully decreased the yearly license fee to approximately $550,000 a year for 6 years.

21. Sadly however, Ms. Matlock's success was met with discriminatory hostility within her supervisory chain.

22. After Ms. Matlock successfully negotiated the deal, Gloria Keeley, a White woman and Assistant Vice President for Business Services, immediately isolated Ms. Matlock from communications with the e-Procurement system vendor and the negotiations team. On information and belief, it is common practice at UIC for the individual who makes a deal to execute that deal. Keely did not allow Ms. Matlock to execute her deal and instead conferred that privilege upon another member of the negotiation team.

23. Keely complained about Ms. Matlock to her direct supervisor, Janet Parker, a White woman and Vice Chancellor of Budget, HR, and Financial Administration. Keeley also complained to Caryn Bills-Windt, a White woman and Associate Chancellor of the Office of Access and Equity. Keely complained that Ms. Matlock was "aggressive" and "bullied" other employees on the negotiation team and prevented them from being involved in the deal.

24. Parker scheduled a meeting with Ms. Matlock to discuss the fallout from the deal and other purported complaints. The context and tone of the conversation led Ms. Matlock to understand that she was being treated differently and more harshly than her White counterparts. It was made clear in the meeting that despite Ms. Matlock achieving a tremendous deal for the University, her actions were being unduly scrutinized. Parker scolded Ms. Matlock for speaking up. She told Ms. Matlock that she needed to be "less sensitive," even if she knew more or knew the system better, she could not say anything.

25. During in-person meetings and in correspondences about and with Ms. Matlock, Parker labeled her as aggressive and hostile. For example, in a June 29, 2020, letter from Parker to Ms. Matlock, Parker relied on racially derogatory stereotypes of Black women as aggressive and hostile when asserting themselves in the workplace. "You have made improvement in toning down your aggressive demeanor towards various System office staff." Parker advises Ms.

5

Matlock to, "[d]isplay more empathy and less ego," "displa[y] more civil behavior," and "be less aggressive." When Ms. Matlock attempted to counter these characterizations, Parker dismissed her.

26. UIC's continuous demeaning treatment of Ms. Matlock is illegal and inconsistent with UIC's Racial Equity Initiative and published commitments to diversity, equity, and inclusion, which are intended to support employees of color like Ms. Matlock.

**B.** *UIC Delayed Ms. Matlock's Promotion and Denied Her a Raise in Salary*

27. Despite Ms. Matlock's demonstrated success in her role and resulting monetary benefits to Defendant, she has not realized a salary commensurate with her experience or comparable to that of administrators at UIC outside of her protected categories.

28. On January 24, 2020, Parker informed Ms. Matlock that she would receive a promotion to include a title change to Executive Director of UIC Purchasing and a salary increase. Yet, shortly after, Ms. Matlock's promotion process was delayed.

29. In a March 27, 2020, email to Ms. Matlock, Parker stated, "You are the Executive Director; all of those changes were already approved but not communicated YET (emphasis in original) …" On July 8, 2020, Parker advised Ms. Matlock that Parker missed the deadline to present the promotion to the Board of Trustees for approval, thus causing further delay.

30. Ms. Matlock's title change to Executive Director of UIC Purchasing was effectuated almost a year after the initial approval, per a letter sent from Parker on January 15, 2021.

31. Ms. Matlock's promotion in title was unaccompanied by a commensurate increase in salary. Parker informed Ms. Matlock that there was no money in the budget to provide the raise that should have accompanied her promotion.

32. Over the same period during which Ms. Matlock's raise was delayed on the purported basis that there was no money in the budget, Ms. Matlock's younger, White male subordinate, Aaron Rosenthal, requested and received a promotion that included a raise.

33. Defendant bestowed Rosenthal with not only a title change, but also a $50,000 increase in salary, an increase that was made retroactive to March 2020. At the time, Rosenthal had less than 10 years of experience to Ms. Matlock's over 40 years of experience.

34. Parker facilitated Rosenthal's promotion by revising the promotional job description for Rosenthal to ensure that he met the minimum qualifications.

35. Defendant finalized Rosenthal's promotion in less than 60 days. On information and belief, Parker fast tracked and finalized Rosenthal's promotion and salary increase without having to wait for approval from the Board.

36. Other similarly situated employees outside of Ms. Matlock's protected classes also received promotions during the period over which Matlock's was delayed. For example, a White woman with similar job responsibilities and a significantly smaller scope of work, was also given a promotion. In 2020, she was elevated to Executive Director with a salary increase from $159,000 to $215,000. Her salary has continued to increase to $237,037 as published in the 2022 UIC Gray Book[3].

37. At the time of filing, Ms. Matlock has yet to receive a raise in salary commensurate with her promotion to Executive Director.

---

[3] The Gray Book is an annual supplement published by the Board of Trustees of the University of Illinois System which provides employment information for Academic and Professional employees working at campuses within the system, including but not limited to, name, job title, tenure status, present salary, and proposed salary.

C. *UIC Pressured Ms. Matlock to Retire to Retain the Employment of her White Male Subordinate.*

38. Beginning in September 2022, Defendant pressured Ms. Matlock to take early retirement to satisfy her younger, White male subordinate.

39. In September 2022, Rosenthal sought and received an offer of employment outside of the University. Rosenthal reported to Defendant that he had accepted the offer, but was willing to stay at UIC on the condition that he would succeed Ms. Matlock as Executive Director upon her retirement.

40. On September 21, 2022, Parker and Michael Ginsburg, a White male and Associate Vice Chancellor for Human Resources, met with Ms. Matlock to discuss Rosenthal's demand. During this meeting, Ms. Matlock communicated to them that she had no firm retirement date. Parker and Ginsburg demanded that Ms. Matlock provide a firm date and confirmation of Rosenthal's succession to her role in writing to Rosenthal by the end of the week for the purpose of retaining Rosenthal and providing a counter-offer to his outside employment offer.

41. Rosenthal, Parker, and Ginsberg subsequently continued attempts to coerce Ms. Matlock to state a retirement date and develop a separation plan. During conversations with Ms. Matlock regarding his demand for a retirement date, Rosenthal would emphasize that he was at the *beginning* of his career while Ms. Matlock was at the *end* of hers.

42. Ms. Matlock declined to provide a retirement date, but herself reassured Rosenthal he was to succeed her; Rosenthal chose to leave the University on October 7, 2022.

43. Less than a month later, Rosenthal, unhappy with the new position, sought approval from Parker and Ginsburg to return to his position at UIC. Defendant acquiesced. On November 16, 2022, Rosenthal returned to his position at UIC with no loss of benefits.

44. UIC engaged in illegal, discriminatory age-related misconduct in its treatment of Ms. Matlock.

**D.** *UIC's Retaliation Against Ms. Matlock*

45. Since the fallout from the 2019 e-Procurement software deal, Ms. Matlock has repeatedly reported that Defendant's actions against her were discriminatory.

46. Specifically, Ms. Matlock detailed Parker's discriminatory and biased conduct in correspondence to UIC on June17, 2021, August 18, 2021, and again on March 20, 2022 in a request for a meeting with the then UIC Chancellor.

47. Ms. Matlock's concerns have also been raised through correspondence sent from her legal counsel. UIC has failed to provide a remedy and continues to engage in illegal and discriminatory conduct.

48. To this day, despite budgetary capacity, Defendant has failed to increase Ms. Matlock's salary commensurate with her experience.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### HOSTILE WORK ENVIRONMENT UNDER 42 U.S.C. § 1981

49. Plaintiff hereby incorporates by reference as though fully set forth herein paragraphs 1-48 of this Complaint.

50. Plaintiff is a Black woman.

51. Plaintiff was subjected to repeated harassment on the basis of race. This included the use of historical stereotypes of Black women to mischaracterize Plaintiff's normal business communications as "aggressive," and open attempts to replace her with a lesser experienced White male. The harassment was unwelcomed.

52. UIC knew of the harassment.

53. The harassment complained of affected a term, condition, or privilege of employment.

54. As a result of Defendant's choices, Plaintiff has sustained economic and emotional harm.

## SECOND CAUSE OF ACTION
## DISPARATE TREATMENT UNDER 42 U.S.C § 1981

55. Plaintiff hereby incorporates by reference as though fully set forth herein paragraphs 1-48 of this Complaint.

56. Plaintiff is a Black woman.

57. Plaintiff is well-qualified for her position, and at all relevant times met Defendant's reasonable performance expectations both for her job, and for the promotion and raise that she sought.

58. Defendant discriminated against Plaintiff with respect to terms, conditions, or privileges of employment, treating her less favorably than at least one similarly-situated White employee.

59. Plaintiff's race was a determinative factor in Defendant's treatment of her.

60. As a result of Defendant's choices, Plaintiff has sustained economic and emotional harm.

## THIRD CAUSE OF ACTION
## RETALIATION UNDER 42 U.S.C. § 1981

61. Plaintiff hereby incorporates by reference as though fully set forth herein paragraphs 1-48 of this Complaint.

62. Plaintiff engaged in protected activity when she complained to UIC about race discrimination.

63. Following Plaintiff's complaints, Defendant retaliated against Plaintiff.

64. A causal connection existed between Plaintiff's protected activity and the retaliatory actions she experienced.

65. As a result of Defendant's choices, Plaintiff has sustained economic and emotional harm.

## FOURTH CAUSE OF ACTION
## HOSTILE WORK ENVIRONMENT UNDER TITLE VII

66. Plaintiff hereby incorporates by reference as though fully set forth herein paragraphs 1-48 of this Complaint.

67. Plaintiff is a Black woman.

68. Plaintiff was subjected to repeated harassment on the basis of race and gender. This included the use of historical stereotypes of Black women to mischaracterize Plaintiff's normal business communications as "aggressive," and open attempts to replace her with a lesser experienced White male. The harassment was unwelcomed.

69. UIC knew of the harassment.

70. The harassment complained of affected a term, condition, or privilege of employment.

71. As a result of Defendant's choices, Plaintiff has sustained economic and emotional harm.

## FIFTH CAUSE OF ACTION
## DISPARATE TREATMENT UNDER TITLE VII

72. Plaintiff hereby incorporates by reference as though fully set forth herein paragraphs 1-48 of this Complaint.

73. Plaintiff is a Black woman.

74. Plaintiff is well-qualified for her position, and at all relevant times met Defendant's reasonable performance expectations both for her job, and for the promotion and raise that she sought.

75. Defendant discriminated against Plaintiff with respect to terms, conditions, or privileges of employment, treating her less favorably than at least one similarly-situated White employee and a similarly-situated male employee.

76. Plaintiff's race and gender were determinative factors in Defendant's treatment of her.

77. As a result of Defendant's choices, Plaintiff has sustained economic and emotional harm.

## SIXTH CAUSE OF ACTION
## RETALIATION UNDER TITLE VII

78. Plaintiff hereby incorporates by reference as though fully set forth herein paragraphs 1-48 of this Complaint.

79. Plaintiff engaged in protected activity when she complained to UIC about race and gender discrimination.

80. Following Plaintiff's complaints, Defendant retaliated against Plaintiff.

81. A causal connection existed between Plaintiff's protected activity and the retaliatory actions she experienced.

82. As a result of Defendant's choices, Plaintiff has sustained economic and emotional harm.

## SEVENTH CAUSE OF ACTION
## HOSTILE WORK ENVIRONMENT UNDER ADEA

83. Plaintiff hereby incorporates by reference as though fully set forth herein paragraphs 1-48 of this Complaint.

84. Plaintiff is a Black woman, over the age of forty.

85. Plaintiff was subjected to repeated harassment on the basis of age. This included the Defendant's open and ongoing attempts to coerce Plaintiff into retirement and to replace her with a younger, lesser experienced White male. The harassment was unwelcomed.

86. UIC knew of the harassment.

87. The harassment complained of affected a term, condition, or privilege of employment.

88. As a result of Defendant's choices, Plaintiff has sustained economic and emotional harm.

## EIGHTH CAUSE OF ACTION
## DISPARATE TREATMENT UNDER ADEA

89. Plaintiff hereby incorporates by reference as though fully set forth herein paragraphs 1-48 of this Complaint.

90. Plaintiff is a Black woman, over the age of forty.

91. Plaintiff was well-qualified for her position, and at all relevant times met Defendant's reasonable performance expectations both for her job, and for the promotion and raise that she sought.

92. Defendant discriminated against Plaintiff with respect to terms, conditions, or privileges of employment, treating her less favorably than at least one similarly-situated younger employee.

93. Plaintiff's age was a determinative factor in Defendant's treatment of her.

94. As a result of Defendant's choices, Plaintiff has sustained economic and emotional harm.

## NINTH CAUSE OF ACTION
## RETALIATION UNDER TITLE UNDER ADEA

95. Plaintiff hereby incorporates by reference as though fully set forth herein paragraphs 1-48 of this Complaint.

96. Plaintiff engaged in protected activity when she complained to UIC about age discrimination.

97. Following Plaintiff's complaints, Defendant retaliated against Plaintiff.

98. A causal connection existed between Plaintiff's protected activity and the retaliatory actions she experienced.

99. As a result of Defendant's choices, Plaintiff has sustained economic and emotional harm.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

a) Compensatory damages including back pay, front pay, and benefits;

b) Actual, special, and general damages in an amount according to proof;

14

c)  Damages for mental and emotional distress;

d)  Punitive and exemplary damages;

e)  Costs of suit, including attorney fees and expenses as permitted by law;

f)  An award of interest, including prejudgment interest, at the legal rate as permitted by law; and

g)  Such other and further relief as the Court deems proper and just under all the circumstances.

## JURY DEMAND

Plaintiff, DEBRA MATLOCK, demands a trial by jury on all claims herein so triable.

Respectfully submitted,

DATED: October 20, 2023

_____
One of the Plaintiff's Attorneys

Ben Crump*
Chris O'Neal*
**BEN CRUMP LAW, PLLC**
122 South Calhoun Street
Tallahassee, Florida 32301
Tel. 800.715.5999
ben@bencrump.com
chris@bencrump.com

Nabeha Shaer*
**BEN CRUMP LAW, PLLC**
633 Pennsylvania Avenue NW
Second Floor
Washington, DC 20004
Tel. 800.715.5999
nabeha@bencrump.com

Diandra "Fu" Debrosse Zimmermann
**DICELLO EVITT LLP**
505 20th Street North
Suite 1500
Birmingham, Alabama 35203
Tel. 205.855.5700
fu@dicellolevitt.com

Éviealle Dawkins
**DICELLO LEVITT LLP**
1101 17th Street, NW
Suite 1000
Washington, D.C. 20036
Tel. 202.975.2288
edawkins@dicellolevitt.com

Kenneth Abbarno*
**DICELLO LEVITT LLP**
8160 Norton Parkway

        Mentor, Ohio 44060
        Tel. 440.953.8888
        kabbarno@dicellolevitt.com

        ***Counsel for Plaintiffs***

*Motion for *pro hac vice* admission to be filed.

**CERTIFICATE OF SERVICE**

I, Diandra Debrosse Zimmermann, an attorney, certify that on October 20, 2023, I electronically filed the foregoing document with the Clerk of the Court using the CMECF system, which will send notification of such filing to all counsel of record at their e-mail addresses on file with the Court.

*/s/ Diandra Debrosse Zimmermann*