UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DEBRA MATLOCK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 23-cv-15194 |
| v. ) | |
| ) | Judge April M. Perry |
| THE BOARD OF TRUSTEES OF ) | |
| THE UNIVERSITY OF ILLINOIS, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Plaintiff Debra Matlock ("Plaintiff") brings this employment discrimination and retaliation case against the Board of Trustees of the University of Illinois ("Defendant") under 42 U.S.C. § 1981 ("Section 1981"), Title VII of the Civil Rights Act of 1964 ("Title VII"), and the Age Discrimination in Employment Act ("ADEA"). Specifically, Plaintiff alleges that Defendant subjected her to a hostile work environment based on race in violation of Section 1981 (Count I), disparate treatment based on race in violation of Section 1981 (Count II), retaliation in violation of Section 1981 (Count III), hostile work environment based on race and gender in violation of Title VII (Count IV), disparate treatment based on race and gender in violation of Title VII (Count V), retaliation in violation of Title VII (Count VI), hostile work environment in violation of the ADEA (Count VII), disparate treatment in violation of the ADEA (Count VIII), and retaliation in violation of the ADEA (Count IX). Doc. 36 ¶¶ 49-99. Defendant now moves for dismissal of Plaintiff's hostile work environment and retaliation claims under Rule 12(b)(6). Doc. 41 at 1. For the following reasons, Defendant's motion is granted in part.

**BACKGROUND**

As is appropriate in deciding a motion to dismiss, the Court accepts the facts in Plaintiff's complaint as true and views them in the light most favorable to her. *See Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

Plaintiff is a Black female who was born in 1952. Doc. 36 ¶ 6. In September 2014, Plaintiff was hired as Director of Defendant's Purchasing and Contract Management Department, which is responsible for procurement for Defendant's colleges, administrative departments, hospitals, and clinics. *Id.* ¶¶ 7, 16. Plaintiff alleges that she was the only minority Director employed by Defendant, and that she was repeatedly discriminated against, harassed, and retaliated against because of her protected characteristics. *Id.* ¶ 2.

The first incident Plaintiff complains of began in November 2018 when Plaintiff was involved in negotiations for a new electronic procurement system. *Id.* ¶ 18. During the negotiations, Plaintiff felt as though several of her team members were delaying the negotiations. *Id.* ¶ 19. Time was of the essence, so Plaintiff attempted to create a sense of urgency within the team which Plaintiff alleges was inaccurately and inappropriately mischaracterized as bullying. *Id.* Although the negotiations ended successfully for Defendant, Plaintiff claims that her success was met with "discriminatory hostility" from her supervisory chain. *Id.* ¶¶ 20-22. For example, Plaintiff alleges that she was isolated from communications with the software vendor and the negotiations team and was not allowed to execute the deal. *Id.* ¶ 22. Plaintiff also alleges that she was "scolded," was told that she needed to be "less sensitive," and was labeled as aggressive and hostile. *Id.* ¶¶ 24-25. As an example of this, Plaintiff points to a June 29, 2020 letter in which Plaintiff's supervisor told Plaintiff that she had "made improvement in toning down … aggressive demeanor towards various System office staff," but still needed to "[d]isplay more empathy and less ego," "display more civil behavior," and "be less aggressive." *Id.*

The second incident Plaintiff complains of involved a delayed promotion and a raise that never materialized. Specifically, on January 24, 2020, Plaintiff's supervisor informed Plaintiff that Plaintiff would be promoted to Executive Director and receive a pay raise. *Id.* ¶ 28. However, Plaintiff's supervisor subsequently told Plaintiff that the supervisor had missed the deadline to present the promotion to the Board of Trustees for approval. *Id.* ¶ 29. On January 15, 2021, Plaintiff's title was officially changed to Executive Director, but Plaintiff's salary was not increased because there was purportedly no money in the budget for the raise. *Id.* ¶¶ 30-31. During this same timeframe, Plaintiff alleges that other non-Black employees with less experience were promoted and received salary increases without needing Board approval. *Id.* ¶¶ 33, 36. As of the time the complaint was filed, Plaintiff alleges that she was still employed by Defendant as Executive Director but had not received the appropriate raise. *Id.* ¶ 37.

Finally, Plaintiff complains about pressure from supervisors to retire. In September 2022, a younger white male subordinate allegedly received a competing employment offer and told Defendant he would stay on the condition that he would succeed Plaintiff. *Id.* ¶ 39. Plaintiff's supervisors then met with Plaintiff and told Plaintiff that she needed to provide a firm retirement date by the end of the week. *Id.* ¶ 40. Plaintiff alleges that there were subsequent continued attempts to coerce Plaintiff to set a retirement date and develop a separation plan. *Id.* ¶ 41. Meanwhile, the younger employee allegedly told Plaintiff that "he was at the beginning of his career while [she] was at the end of hers." *Id.*

Plaintiff allegedly complained about her supervisor's discriminatory conduct by writing letters to Defendant on June 17, 2021, August 18, 2021, and March 20, 2022. *Id.* ¶ 46. Plaintiff also claims that her concerns have been raised through correspondence sent to Defendant by Plaintiff's counsel, although she provides no dates for this correspondence. *Id.* ¶ 47.

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on June 13, 2023. *Id.* ¶ 13. On October 6, 2023, the EEOC issued a Notice of Right to Sue. *Id.* ¶ 14. Plaintiff filed this action on October 20, 2023. Doc. 1.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a case may be dismissed when a plaintiff fails to state a claim upon which relief can be granted. A Rule 12(b)(6) motion is a challenge to the sufficiency of a complaint, not its merits. *See Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). When considering such a motion, the Court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *See Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a motion to dismiss, a plaintiff need only include "a short and plain statement of a claim that is plausible on its face and entitles them to relief." *Roldan v. Stroud*, 52 F.4th 335, 339 (7th Cir. 2022). The short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The factual allegations in the complaint must be sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Threadbare recitals of the elements of a cause of action and allegations that are merely legal conclusions are not sufficient to survive a motion to dismiss. *See Iqbal*, 556 U.S. at 678.

## ANALYSIS

4

Defendant seeks dismissal of Plaintiff's Section 1981, Title VII, and ADEA claims on three different grounds. First, Defendant asserts that Plaintiff's hostile work environment claims under Title VII and the ADEA are time barred to the extent they rely upon acts prior to August 18, 2022. Second, Defendant argues that all of Plaintiff's hostile work environment claims should be dismissed because Defendant's allegedly discriminatory conduct was not severe or pervasive. Third, Defendant claims that Plaintiff's retaliation claims should be dismissed because no materially adverse action occurred after Plaintiff's complaints of discrimination. The Court will address each argument in turn.

### A. Timeliness

Before a plaintiff may sue under Title VII and the ADEA, she must first file a charge with the EEOC. 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626(d)(1). In Illinois, this charge must be submitted within 300 days of the allegedly unlawful employment practice. *See Bass v. Joliet Pub. Sch. Dist. No. 86*, 746 F.3d 835, 839 (7th Cir. 2014) ("Title VII provides that a charge of employment discrimination must be filed with the EEOC within 300 days of the alleged unlawful employment practice, in deferral states like Illinois"); *Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 637 (7th Cir. 2004) ("In Illinois, an employee may sue under the ADEA ... only if [she] files a charge of discrimination with the EEOC within 300 days of the alleged unlawful employment practice"). In this case, Plaintiff's EEOC charge was filed on June 13, 2023. Therefore, all conduct that occurred more than 300 days prior to this date, *i.e.*, discriminatory acts that occurred before August 18, 2022, ordinarily would be time-barred.

Plaintiff argues that there is no time barring in this case because her hostile work environment claim constitutes a continuing violation. In *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 117-120 (2002), the Supreme Court held that hostile workplace claims

5

may survive even if they depend upon conduct more than 300 days before the EEOC charge was filed if the claim involves "the same type of employment actions, [which] occurred relatively frequently, and were perpetrated by the same managers" such that all constitute "the same actionable hostile environment claim." Under the continuing violation doctrine, "[i]t does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Id.* at 117.

A key part of the continuing violation doctrine is that the hostile workplace was continuous. For that reason, the Seventh Circuit has found that the continuing violation doctrine cannot be used to tie together hostile environment claims separated by gaps in time. *See Milligan-Grimstad v. Stanley*, 877 F.3d 705, 713 (7th Cir. 2017) (declining to apply the continuing violation doctrine when there was a gap of two or three years between episodes of harassment); *Tinner v. United Ins. Co. of Am.*, 308 F.3d 697, 708-09 (7th Cir. 2002) (holding that a two year gap was too long in part because "if the employee knew, or with the exercise of reasonable diligence should have known, that each act, once completed, was discriminatory, the employee must sue upon that act within the relevant statutory period"). Moreover, "[w]hen determining whether gaps in the alleged conduct prevent it from forming a single employment practice, [the Seventh Circuit has] demanded that plaintiffs provide more than speculative, unspecific assertions." 877 F.3d at 713.

In this case, Plaintiff's complaint is divided into three sections alleging facts corresponding to three time periods that Plaintiff believes demonstrate illegal discrimination by Defendant: (1) the 2018 contract negotiation and subsequent criticisms of Plaintiff's demeanor;

6

(2) the January 2020 promised promotion and raise, which promotion was not effectuated until January 2021 and which never resulted in a pay increase; and (3) the pressure to retire, which began in September 2022. Only the first and third categories of evidence support Plaintiff's hostile work environment claims.[1] For the reasons that follow, the Court finds that these allegations do not support a finding of a single continuous hostile workplace claim.

According to the complaint, the first acts demonstrating a hostile work environment occurred between November 2018 and June 2020, following Plaintiff's contract negotiations for the e-procurement system. During this time Plaintiff was scolded for being too sensitive, told that she was aggressive and hostile, and coached to display less ego and more empathy. More than two years later, in September 2022, the complaint alleges that Plaintiff's supervisors began a pressure campaign to get her to retire in order to retain and promote a younger co-worker. There is seemingly nothing to connect the 2018 to 2020 conduct with the 2022 conduct and the complaint does not describe any hostility experienced by Plaintiff between June 2020 and September 2022. Moreover, the types of hostility Plaintiff experienced were of differing types (first personal criticism and later encouragement to retire) and seemingly based upon different protected characteristics (first race and gender then age). Thus, even viewing the facts in Plaintiff's favor and drawing all reasonable inferences therefrom, the complaint does not allege a single actionable hostile environment claim. For these reasons the Court finds that the 2018 to 2020 conduct is time-barred and cannot be used to support Plaintiff's hostile work environment claims under Title VII (Count IV) and the ADEA (Count VII).

### B. Hostile Work Environment Claims (Counts I, IV, and VII)

---

[1] Disparate pay claims are distinct from hostile work environment claims. Plaintiff has pled that she received a promotion but not the appropriate raise; she has not pled that this affected her day-to-day workplace environment in any way. The Court is not aware of, and Plaintiff has not cited, any cases in which disparate pay was used to support a finding of a hostile work environment.

The next question is whether, considering the above evidentiary limitations, Plaintiff has plausibly alleged that she was subjected to a hostile work environment because of her race, gender or age. To state a hostile work environment claim, a plaintiff must allege that (1) she was subjected to unwelcome harassment; (2) the harassment was based on a protected characteristic; (3) the harassment was severe or pervasive so as to alter the conditions of employment and create a hostile or abusive working environment; and (4) there is a basis for employer liability. *Alamo v. Bliss*, 864 F.3d 541, 549 (7th Cir. 2017) (elements under Title VII); *Dandy v. United Parcel Service, Inc.*, 388 F.3d 263, 271 (7th Cir. 2004) (elements under Section 1981); *Brooks v. Avancez*, 39 F.4th 424, 441 (7th Cir. 2022) (elements under the ADEA). Whether the workplace is hostile depends on the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Alamo*, 864 F.3d at 549–50. Although "a workplace need not be 'hellish' to constitute a hostile work environment, a hostile work environment must be so pervaded by discrimination that the terms and conditions of employment are altered." *Id*.

While the dispute between the parties centers on whether the conduct was severe or pervasive, the Seventh Circuit has found it "premature at the pleadings stage to conclude just how abusive [a plaintiff's] work environment was." *Huri v. Off. of the Chief Judge of the Cir. Ct. of Cook Cnty.*, 804 F.3d 826, 834 (7th Cir. 2015). Instead, this Court focuses on whether a plausible allegations of abusiveness have been pled. *Id*. In making this determination, the Court is mindful of Rule 8's "undemanding standard" of notice pleading. *See Tate v. SCR Medical Transp.*, 809 F.3d 343, 346 (7th Cir. 2015); *see also Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (discussing how complaint that puts defendant on fair notice of a claim

8

"need not allege all, or any, of the facts logically entailed by the claim and it certainly need not include evidence.").

Beginning with the hostile work environment claim in Count VII, which alleges an age-based pressure campaign to get Plaintiff to retire in order to placate a younger colleague, the Court finds that Plaintiff has plausibly alleged a claim.[2] Depending upon how frequent, pointed, and offensive the retirement comments were – which facts Plaintiff need not detail in her complaint – such conduct could conceivably rise to the level of a hostile work environment. The Court therefore denies the motion to dismiss as to Count VII.

Count IV alleges under Title VII a hostile work environment based upon Plaintiff's race and gender. As is discussed above, Title VII requires that Plaintiff's claims be brought to the EEOC within 300 days of the wrongful conduct. Because Plaintiff did not do so, the Court has excluded as time-barred all of the evidence in Plaintiff's complaint regarding the criticisms of Plaintiff's conduct and demeanor. The Court does not believe that the later comments urging Plaintiff to retire can plausibly be linked to Plaintiff's race or gender. Without any timely allegations in support of race-based or gender-based harassment, Count IV is therefore dismissed. To the extent Plaintiff believes that she can re-plead to allege a continuing hostile work environment that post-dated August 18, 2022, she is granted leave to amend the complaint.

This leaves Count I, a hostile work environment claim based upon race in violation of Section 1981. Section 1981 claims do not need to be brought to the EEOC within 300 days, therefore all of the conduct alleged in the complaint may be considered for this claim. As with Count VII, the Court finds that Plaintiff has adequately stated a claim for relief. Again, depending upon how frequent, pointed, and offensive the comments about Plaintiff's demeanor

---

[2] As this conduct allegedly began in September 2022, all of Plaintiff's allegations in support of Count VII are unaffected by any time-bar issues.

were, it is possible that Plaintiff could prove that her workplace was hostile or abusive. A "severe episode that occurs as rarely as once and a relent-less pattern of lesser harassment" may both be violations. *Alamo*, 864 F.3d at 550 ("There is no 'magic number' of instances or type of slur that indicates a hostile work environment."). Plaintiff has tacitly conceded that the comments about her behavior did not rise to the level of severe abuse. But they may have been pervasive, and Rule 8 does not require Plaintiff to allege every instance of abuse in order to survive a Rule 12(b)(6) motion. The motion to dismiss Count I is therefore denied.

### C. Retaliation Claims (Counts III, VI, and IX)

Plaintiff also alleges Defendant retaliated against Plaintiff due to Plaintiff's complaints about race, gender, and age discrimination. A retaliation claim requires the plaintiff to allege that she "engaged in statutorily protected activity and was subjected to adverse employment action as a result of that activity." *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1029 (7th Cir. 2013) (elements under Title VII); *see also Humphries v. CBOCS W., Inc.*, 474 F.3d 387, 404 (7th Cir. 2007) (Section 1981); *Lauth v. Covance, Inc.*, 863 F.3d 708, 716 (7th Cir. 2017) (ADEA). The protected activity must be specifically identified, and the adverse employment action "must be one that a reasonable employee would find to be materially adverse such that the employee would be dissuaded from engaging in the protected activity." *Roney v. Illinois Dep't of Transp.*, 474 F.3d 455, 461 (7th Cir. 2007). The Seventh Circuit has outlined three categories of adverse employment actions: "(1) cases in which the employee's compensation, benefits or other financial terms of employment are diminished, including cases where employment is terminated; (2) cases in which a nominally lateral transfer without a change in financial terms significantly reduces the employee's career prospects by preventing [her] from using the skills in which [she] is trained and experienced; and (3) cases in which the employee is not moved to a different job or

the skill requirements of [her] present job altered, but the *conditions* in which [she] works are changed in a way that subjects [her] to a humiliating, degrading, unsafe, unhealthful, or otherwise significantly negative alteration in [her] workplace environment—an alteration that can fairly be characterized as objectively creating a hardship, the classic case being that of the employee whose desk is moved into a closet." *Tart v. Illinois Power Co.*, 366 F.3d 461, 475 (7th Cir. 2004). While Plaintiff need not "present proof of a causal link between the protected expression ... and the adverse employment action" at this stage, *Luevano*, 722 F.3d at 1029, there must be some facts from which one could draw the inference that the protected activity could have caused the adverse employment action. *See Cervantes v. Ardagh Group*, 914 F.3d 560, 566 (7th Cir. 2019).

Defendant does not dispute that Plaintiff has adequately pled that she engaged in statutorily protected activity when she complained of discrimination on June 17, 2021, August 18, 2021, and March 20, 2022. Doc. 36 ¶46. But Defendant does dispute whether Plaintiff has adequately alleged an adverse employment action as a result of those complaints. Plaintiff contends that she suffered adverse employment actions when she was isolated from the e-procurement vendor communications, prohibited from executing the deal, delayed in her promotion, and paid less than her position dictated. However, most of these actions preceded Plaintiff's complaints of discrimination. Specifically, Plaintiff's dealings with the e-procurement vendor, execution of that deal, and the delay in Plaintiff's promotion all occurred prior to January 15, 2021 – well before Plaintiff's first discrimination complaint in June 2021. Only the failure to increase Plaintiff's pay took place after Plaintiff's complaints of discrimination. The "the denial of a raise can constitute a materially adverse employment action if a raise would have been an expected element of the employee's salary and its denial cuts the salary in real terms."

11

*Griffin v. Potter*, 356 F.3d 824, 830 (7th Cir. 2004). In this case, Plaintiff has alleged that she was promised a raise to her salary, made complaints to Defendant about discrimination, and never received the raise. This continued refusal to increase Plaintiff's pay after she was promoted to Executive Director could constitute a materially adverse action. At this stage in the proceedings, Plaintiff has adequately pled a retaliation claim for Counts III, VI, and IX.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is granted as to Count IV and denied as to all other Counts, with the caveats set forth in this opinion. Plaintiff may amend the complaint to attempt to correct any of the deficiencies noted herein by June 9, 2025.

Dated: May 9, 2025

_____
APRIL M. PERRY
United States District Judge